UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENEE MAAT,

                    Plaintiff,                                      Case No. 1:12-cv-1194

v.                                                                 HON. JANET T. NEFF

COUNTY OF OTTAWA and
58TH DISTRICT COURT,

                    Defendants.
_____/

## OPINION

Plaintiff Renee Maat filed this disability discrimination action against Defendants Ottawa County and 58th District Court after her request for medical leave was denied and her employment as a court recorder in the 58th District Court was terminated. Pending before the Court are 58th District Court's Motion for Summary Judgment and Motion to Dismiss (Dkt 43) and Defendant Ottawa County's Motion for Summary Disposition (sic, motion to dismiss or motion for summary judgment) (Dkt 47). Plaintiff has filed responses to the respective motions, and Defendants have filed replies. For the reasons set forth in this Opinion, the Court grants 58th District Court's motion. The Court denies Ottawa County's motion to dismiss and denies without prejudice the motion for summary judgment. Having fully considered the parties' written submissions, the Court concludes that oral argument would not assist in the disposition of the issues presented. *See* W.D. Mich. LCivR 7.2(d) (the Court has discretion to schedule oral argument or dispose of a dispositive motion without argument at the end of briefing).

# I. Factual Background

Plaintiff began working at the 58th District Court in 2007 as a traffic clerk and, on December 19, 2008, was promoted to a court recorder position assigned to work in Judge Susan Jonas' courtroom[1] (Dkt 49 ¶ 1; Dkt 45 ¶ 2). In November 2010, she was hospitalized for three days for pulmonary embolism and a cerebral vein clot, and subsequently suffered from dizziness, headaches and anxiety attacks (First Am. Compl. (FAC), Dkt 7, ¶¶ 10-12; Pl. Aff., Dkt 53-1, ¶¶ 7-8). In January 2011, Plaintiff began working part-time hours pursuant to her doctor's restrictions; she took leave under the Family Medical Leave Act (FMLA), 28 U.S.C. § 2601 *et seq.,* for the remaining hours (FAC ¶ 11; Dkt 53-1 ¶ 9). Due to her part-time hours, Plaintiff was reassigned to a court clerk position (FAC ¶ 12; Dkt 53-1 ¶ 10).

After her continuing medical problems, in June 2011, a conflict arose over Plaintiff's continued employment and potential short term disability, and she was informed she could not return to work (FAC ¶¶ 13-19). Her employment was terminated as of June 20, 2011 on the grounds that she had exhausted her FMLA leave and her leave of absence would result in an undue hardship (Dkt 45 ¶ 3; FAC ¶¶ 15-19; Dkt 53-1, ¶ 15, Ex. 4).

Plaintiff's FAC alleges three counts: Count 1—Violations of the Rehabilitation Act[2] by Defendants Ottawa County and the 58th District Court; Count 2—Violations of the Persons with Disabilities Civil Rights Act[3] by Defendants Ottawa County and the 58th District Court; and Count

---

[1]The parties have filed a Joint Statement of Undisputed Facts for each motion ("JSF," Dkts 45, 49), relied on by the Court as cited herein.

[2]Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 *et seq*.

[3]"PWDCRA," MICH. COMP. LAWS § 37.1101, *et seq*.

3—Violations of Americans With Disabilities Act[4] by Defendant Ottawa County. Each count is premised on Defendants' alleged termination of Plaintiff's employment and denial of a reasonable accommodation based on disability.

## II. Legal Standards

### A. Motion to Dismiss

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences from those allegations in favor of the nonmoving party. *Bennett v. MIS Corp.,* 607 F.3d 1076, 1091 (6th Cir. 2010); *Lambert v. Hartman,* 517 F.3d 433, 439 (6th Cir. 2008). "A claim survives this motion where its '[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.'" *Zaluski v. United Am. Healthcare Corp.,* 527 F.3d 564, 570 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007)).

Stated differently, the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "The complaint should give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *German Free State of Bavaria v. Toyobo Co, Ltd.,* 480 F. Supp. 2d 958, 963 (W.D. Mich. 2007); *see also Twombly,* 550 U.S. at 555 (citing FED. R. CIV. P. 8(a)(2)). Accordingly, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under a viable legal theory. *Bavaria,* 480 F. Supp. 2d at 963; *see also Lillard v. Shelby Cnty. Bd. of Educ.,* 76 F. 3d 716, 726 (6th Cir. 1996). Further, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

---

[4]"ADA," 42 U.S.C. § 12101 *et seq.*

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do …." *Twombly,* 550 U.S. at 555.

B.  Motion for Summary Judgment

A moving party is entitled to a grant of its motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.,* 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville,* 463 F.3d 569, 572 (6th Cir. 2006)).

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.,* 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson,* 477 U.S. at 248). "A genuine dispute concerns evidence 'upon which a reasonable jury could return a verdict in favor of the non-moving party.' A factual dispute is material only if it could affect the outcome of the suit under the governing law." *Fuhr v. Hazel Park Sch. Dist.,* 710 F.3d 668, 673 (6th Cir. 2013) (quoting *Tysinger,* 463 F.3d at 572). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.,* 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson,* 477 U.S. at 251-52).

### III.  58th District Court Motion

58th District Court has filed a Motion to Dismiss under FED. R. CIV. P. 12(b)(6) and Motion for Summary Judgment under FED. R. CIV. P. 56, on the ground that Plaintiff's claim under the

Rehabilitation Act (Count 1) fails because she cannot show the Court is a recipient of federal financial assistance, which is an essential element of her claim.[5]  58th District Court asserts that the undisputed facts establish that 58th District Court is locally funded by Ottawa County and in 2011, the year relevant to this case, did not receive federal funds directly from the federal government or indirectly through Ottawa County or the State Court Administrative Office (SCAO).  Further, if Plaintiff's federal claim under the Rehabilitation Act is dismissed, this Court should decline supplemental jurisdiction over the PWDCRA state law claim, and it should be dismissed pursuant to FED. R. CIV. P. 12(b)(1).

## A.  Rehabilitation Act Claim

An essential element of a claim under § 504 of the Rehabilitation Act of 1973 is that the relevant program or activity is receiving federal financial assistance.  *Sandison v. Mich. High Sch. Athletic Ass'n, Inc.,* 64 F.3d 1026, 1030-31 (6th Cir. 1995).  Section 504 of the Rehabilitation Act provides in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ….

29 U.S.C. § 794(a).

"Program or activity" is further defined as "all of the operations of":

---

[5]"[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).  However, because here the parties rely on documents outside the pleadings, this Court considers the motion under the summary judgment standard rather than the motion to dismiss standard.

> (A)     a department, agency, special purpose district, or other instrumentality of a State or of a local government; or

> (B)     the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government.

29 U.S.C. § 794(b)(1).

Plaintiff does not dispute 58th District Court's evidence that it did not directly receive federal funding in 2011.  In this regard, 58th District Court has presented affidavits stating that in 2011 no federal funds received by Ottawa County were expended for 58th District Court operations, and the Court did not receive any federal funds from the SCAO, as a grantee from any federal agency, as a subgrantee of Ottawa County, or as a subgrantee through the State of Michigan.[6]

Plaintiff nonetheless argues that 58th District Court is part of the larger "State district court" that was extended federal financial assistance in 2011, and if any part of a department receives financial assistance, the whole department is deemed a recipient of federal assistance (Dkt 54 at 8-9).  Further, a state entity is not required to receive federal assistance; "extending" such funding is sufficient (*id.* at 14).  That is, the mere availability of federal grant funds from the SCAO constituted "extending" federal financial assistance to 58th District Court, even though 58th District Court was not one of the local district courts that received the grant funds.  Plaintiff thus argues that there can be no dispute that federal financial assistance was "indirectly extended" to 58th District Court under the language of § 794(b)(1) (*id.* at 15).

_____

[6]Affidavits of 58th District Court Chief Judge Bradley Knoll (Dkt 45-1), Dawn Scholten (Ottawa County Accountant II) (Dkt 45-2), and Dawn Monk (Deputy State Court Administrator for SCAO) (Dkt 45-3).

6

Plaintiff's reasoning is vulnerable at several junctures and does not support a conclusion that 58th District Court was an indirect recipient of federal financial assistance. While there admittedly is scant, if any, legal authority directly on point, the authority addressing § 794 makes it clear § 504 of the Rehabilitation Act is not without legislated limits on liability. Plaintiff's reasoning effectively eviscerates those limits and is contrary to the intent and language of § 794. Plaintiff cites no case law to support this reasoning, and it is in fact undermined by Plaintiff's own citation to case law examining the legislative history of § 794.

1.

As an initial matter, Plaintiff's premise that 58th District Court is a component of one "state district court" or Michigan's "One Court of Justice," and therefore, one "department" for purposes of § 504 is questionable. Plaintiff first cites *Judges of the 74th Judicial District v. Bay County*, 190 N.W.2d 219, 224 (Mich. 1971), for the basic proposition that " Michigan has but one district court. For the administration of the district court, the state is divided into judicial districts" (Dkt 54 at 8). Plaintiff then cites *Pucci v. Nineteenth District Court,* 628 F.3d 752 (6th Cir. 2010), as holding that "the 19th District Court was a subdivision of the larger one district court and the unified judicial system" (Dkt 54 at 8-9).

Plaintiff is correct that in *Pucci*, 628 F.3d at 763, the Sixth Circuit determined that "there can be no doubt that all of Michigan's courts, including those trial-level courts funded by local funding units, are part of one, unified judicial branch of the state." "Consistent with the unitary nature of Michigan's judicial power, the Nineteenth District Court is itself only a subdivision of the 'one district court' of Michigan." *Id.* at 763 n.9 (citing *Judges of the 74th Judicial Dist.*, 190 N.W.2d at

224).  However, these cases addressed entirely different legal contexts, not § 504 or the language

or reasoning under 29 U.S.C. § 794.

In *Pucci*, the question addressed was whether the 19th District Court and its chief judge were

entitled to Eleventh Amendment sovereign immunity from a former deputy court administrator's

§ 1983 action alleging her termination violated the First and Fourteenth Amendments.  *Pucci*, 628

F.3d at 755-56.  Applying the four context-specific factors for sovereign immunity,[7] the Sixth

Circuit concluded that "Michigan's district courts, including the Nineteenth District Court, are arms

of the state [as opposed to political subdivisions] *for sovereign-immunity purposes*."  *Id.* at 760-62

(emphasis added).

This Court finds *Pucci* inapposite for purposes of determining liability under § 794 of the

Rehabilitation Act.  Because it was integral to the analysis of the sovereign immunity factors, the

Sixth Circuit expounded on Michigan's state court structure and administration:

> The Michigan Constitution unquestionably establishes a unified state judicial
> system, of which the Nineteenth District Court is a subdivision, under the control and
> administration of the Michigan Supreme Court.  Thus, the second factor identified
> in *Ernst*—"the language by which state statutes and state courts refer to the entity
> and the degree of state control and veto power over the entity's actions"—favors
> granting sovereign immunity.  *Ernst,* 427 F.3d at 359.
>
> Michigan's Constitution vests the state's judicial power "*exclusively in one
> court of justice* which shall be divided into one supreme court, one court of appeals,
> one trial court of general jurisdiction known as the circuit court, one probate court,
> and courts of limited jurisdiction *that the legislature may establish*," MICH. CONST.
> art. VI, § 1 (emphasis added), and vests in the Supreme Court "general

---

[7]The factors, known as the *Ernst* factors, are: (1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government.  *Pucci,* 628 F.3d at 760 (quoting *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005) (en banc)).

superintending control *over all courts*," MICH. CONST. art. VI, § 4 (emphasis added). Additionally, state statutes establish "judicial districts of the district court each of which is *an administrative unit subject to the superintending control of the supreme court*." MICH. COMP. LAWS § 600.8101(1) (emphasis added); *see also* MICH. COMP. LAWS § 600.8221 (granting "full authority and control [in district judges] *subject to the supervision of the supreme court*" (emphasis added)). Thus it is the *state* legislature that establishes and defines the authority of the district courts, and it is the *state* supreme court that exercises supervisory and administrative control over those district courts. The local funding units have no such influence.

The Michigan Supreme Court has repeatedly affirmed the unitary nature of the state's judicial power and the Michigan Supreme Court's exclusive role as supervisor and administrator of all of the subunits of that "one court" system. The Michigan Supreme Court held: "Despite the complications of the trial court environment, the case law, taken as a whole, has come to strongly affirm that the *fundamental and ultimate responsibility for all aspects of court administration, including operations and personnel matters within the trial courts, resides within the inherent authority of the judicial branch* [of the State of Michigan]." *Judicial Attorneys Ass'n v. State,* 459 Mich. 291, 586 N.W.2d 894, 897 (1998) (emphasis added). Thus, "[t]he judicial branch is constitutionally accountable for the operation of the courts and for those who provide court services." *Id.* at 899. Additionally, "the expenses of justice *are incurred for the benefit of the State* and only charged against the counties in accordance with old usage, as a proper method of distributing the burden." *Grand Traverse Cnty. v. State,* 450 Mich. 457, 538 N.W.2d 1, 9 (1995) (quoting *Stowell v. Jackson Cnty. Bd. of Supervisors,* 57 Mich. 31, 23 N.W. 557, 558 (1885)) (emphasis added). Given these circumstances, there can be no doubt that all of Michigan's courts, including those trial-level courts funded by local funding units, are part of one, unified judicial branch *of the state.*[9] Consequently, just as the Michigan Supreme Court is an arm of the state, so is its Nineteenth District Court.

_____

9. Consistent with the unitary nature of Michigan's judicial power, the Nineteenth District Court is itself only a subdivision of the "one district court" of Michigan. *See Judges of 74th Judicial Dist. v. Cnty. of Bay,* 385 Mich. 710, 190 N.W.2d 219, 224 (1971) ("Michigan has but one district court. For the administration of the district court, the state is divided into judicial districts.").

*Pucci*, 628 F.3d at 762-63.

The *Pucci* Court thus concluded that Michigan's district courts were an arm of the state rather than of the municipal or county entities, entitling the courts to sovereign immunity. This

reasoning does not support Plaintiff's conclusion that liability is compelled under § 504, particularly given the much different tests applied by the courts based on the purpose and language of § 794.

2.

"To determine the extent of application of § 504, it is necessary to determine two interrelated questions: (1) whether the person or entity charged with discrimination is the 'recipient' of federal assistance, and, if so (2) whether discrimination occurred within the 'program or activity' receiving assistance." James Lockhart, Annotation, *Who is Recipient Of, and What Constitutes Program or Activity Receiving, Federal Financial Assistance for Purposes of § 504 of Rehabilitation Act (29 U.S.C. § 794), Which Prohibits Any Program or Activity Receiving Financial Assistance From Discriminating on Basis of Disability*, 160 A.L.R. FED. 297, § 2(a) (2000). "In a 1986 opinion dealing with the first of these questions, the United States Supreme Court held that § 504 applies to both direct and indirect 'recipients' of federal financial assistance, but not to 'beneficiaries.'" *Id.* (citing *U.S. Dept. of Transp. v. Paralyzed Veterans of Am.,* 477 U.S. 597 (1986)). "The Court found that the intent of Congress was to impose § 504 responsibilities on those who, by their choice to accept or reject federal financial assistance, were in a position to accept or reject the antidiscrimination responsibilities that acceptance of the assistance entailed." *Id.* "This test continues to be applied, as does the rule that § 504 applies to both direct and indirect recipients of financial assistance." 160 A.L.R. FED. 297, §§ 2(a), 10.

There appears to be no generally accepted analytical framework for determining whether an entity sued qualifies as a "program or activity receiving Federal financial assistance" under § 794. The applicability of § 504 of the Rehabilitation Act to the courts under § 794 has been addressed in only a handful of cases, none of which address circumstances analogous to those presented in this

10

case. *See* 160 A.L.R. FED. 297, § 19 (discussing cases).  Courts have found or suggested that a state or local court or judicial system was a recipient or a program or activity receiving federal financial assistance for purposes of applying § 504 of the Rehabilitation Act where:  (1) discrimination was alleged in the county court system and the county received federal revenue-sharing funds that were used in part to defray court expenses, *DeLong v. Brumbaugh*, 703 F. Supp. 399 (W.D. Pa. 1989); (2) a county court system received grants from the Law Enforcement Assistance Administration and Department of Health, Education, and Welfare, *Greater Los Angeles Council of Deafness, Inc. v. Zolin*, 607 F. Supp. 175 (C.D. Cal. 1984), *aff'd in part & rev'd in part on other grds*, 812 F.2d 1103 (9th Cir. 1987); and (3) the court received federal financial assistance in the form of grants from the United States Department of Justice, *Galloway v. Superior Court of Dist. of Columbia*, 816 F. Supp. 12 (D. D.C. 1993).  *See* 160 A.L.R. FED. 297, § 19.  No liability under § 504 was found in *Soto v. City of Newark*, No. Civ. A. 98–5582, 1999 WL 987385 (D. N.J. Oct. 29, 1999), where the defendants offered proof that the municipal court received no federal funding and the plaintiffs provided no evidence refuting the defendants' contention.  *See id.*

In contexts other than the courts or judicial system, the analysis under § 794 has distinguished between government and other contexts, such as education.

> Under § 504(b), an entire public school system or institution of higher education is considered a program or activity receiving federal assistance if any part of it receives such assistance.  However, an entire state or local government is not such a program or activity.  Rather, § 504 covers only the governmental department, agency, special purpose district, or other instrumentality to which federal assistance is extended, and even in the case of assistance to a state or local government as a whole, § 504 still covers only the governmental entity that distributes the assistance and any governmental entity to which the assistance is extended.

160 A.L.R. FED. 297, § 2(a) (footnotes omitted).  *See also Alford v. City of Cannon Beach,* No. CV–00–303, 2000 WL 33200554, at *26 (D. Or. Jan. 17, 2000) (noting that the courts are split as

to whether a state or local government itself is a proper defendant in a § 504 Rehabilitation Act claim (citing 160 A.L.R. FED. 297, § 16) ("*compare Innovative Health Sys., Inc. v. City of White Plains*, 931 F. Supp. 222, 234 (S.D.N.Y. 1996) (allegation that City received federal financial assistance was sufficient to sustain claim that the zoning and planning boards discriminated under Rehabilitation Act), *aff'd*, 117 F.3d 37 (2d Cir. 1997); *with Schroeder v. City of Chicago*, 715 F. Supp. 222, 225 (N.D. Ill. 1989) (allegation that City received federal financial assistance insufficient to sustain Rehabilitation Act claim because City does not meet statutory definition of 'program or activity'), *aff'd*, 927 F.2d 957 (7th Cir. 1991) (amendments to Rehabilitation Act's 'program or activity' not intended to 'sweep in the whole state or local government[.]')").

In light of the above considerations, Plaintiff's argument—that because the SCAO receives federal financial assistance, the entire state court system should be covered in all its operations—is not persuasive. First, although Michigan's district courts may be considered part of one, unified judicial branch of the state, and one larger state district court, for some purposes, e.g., sovereign immunity, the local district courts are clearly independent units rather than one "department" encompassing the entire state judicial system. The district trial court is "a subdivision of the 'one district court' of Michigan." *Pucci*, 628 F.3d at 763 n.9 (quoting *Judges of the 74th Judicial Dist.*, 190 N.W.2d at 224). "For the administration of the district court, the state is divided into judicial districts." *Id.* Administratively, and operationally, 58th District Court should not be considered a recipient of federal financial assistance merely because the SCAO receives federal funds. To the extent Plaintiff argues that 58th District Court is an arm of the state, the case law counsels against a conclusion that federal assistance to SCAO renders 58th District Court a recipient of federal assistance on that basis, because "§ 504 covers only the governmental department, agency, special

purpose district, or other instrumentality to which federal assistance is extended, and even in the case of assistance to a state or local government as a whole, § 504 still covers only the governmental entity that distributes the assistance and any governmental entity to which the assistance is extended." *See* 160 A.L.R. FED. 297, § 2(a).

The cases cited by Plaintiff do not hold to the contrary. In fact, as 58th District Court points out in its Reply brief (Dkt 46 at 4-5), Plaintiff cites *Huber v. Howard County*, 849 F. Supp. 407, 415 (D. Md. 1994) for its holding that "[w]hile such assistance to one department does not subject another department to the requirements of §504, if one part of a department receives federal financial assistance, the whole department is considered to receive federal assistance so as to be subject to §504" (Dkt 54 at 11). However, Plaintiff disregards the *Huber* Court's additional and immediately preceding portion of that sentence: "While the receipt of federal financial assistance by one department or agency of a county *does not render the entire county* subject to the provisions of § 504 …." (emphasis added). *Id.*

The cases cited by Plaintiff holding that sub-units of municipal government or entire departments of an entity are covered if a segment received federal assistance are not based on analogous contexts. For instance, in *Huber*, in a suit by a firefighter, even though the Howard County Department of Fire and Rescue Services, which employed and discharged the plaintiff, did not receive federal financial assistance, the Court found liability because the County Office of Emergency Management and Civil Defense, which was a part of the County Department of Fire and Rescue Services, did receive assistance, and moreover, the salary of the person who served as both Director of the Department of Fire and Rescue Services and Director of the Office of Emergency Management and Civil Defense, was partially funded by federal money. *Huber*, 849 F. Supp. at 415.

13

In *Tanberg*, also cited by Plaintiff (Dkt 54 at 10), the Court's brief analysis of the federal financial assistance issue found the County Sheriff's Department liable under § 504 in an action by a volunteer reserve deputy because there was uncontroverted evidence that the Department received federal grants. *Tanberg v.Weld Cnty. Sheriff*, 787 F. Supp. 970, 974 (D. Colo. 1992).

Such holdings simply do not support the broad proposition that Michigan's entire judicial system is one "department" for purposes of determining federal financial assistance under § 794. Holding that every local district court in Michigan received federal financial assistance by virtue of the SCAO's receipt of federal funds would eviscerate any intended limit under the language of § 794. Virtually every entity under the umbrella of a state unit or agency would be subject to liability, entirely contrary to Congress's intent to limit "the application of § 504 to recipients of 'federal financial assistance,' and 'impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds.'" *See Moreno v. Consol. Rail*, 99 F.3d 782, 788 (6th Cir. 1996) (quoting *Paralyzed Veterans,* 477 U.S. at 605)*. See also Bentley v. Cleveland Cnty .Bd. of Cnty. Com'rs*, 41 F.3d 600, 603-04 (10th Cir. 1994) (giving examples of the proper limits of § 794).

Finally, this Court finds no merit in Plaintiff's argument that 58th District Court is liable under § 504 merely because SCAO offered or made grants available based on the dictionary definition of the word "extended" as "to make the offer of; to make available" (Dkt 54 at 14). To hold every entity liable under § 794 merely on the basis that federal financial assistance is made available would render the statutory language devoid of any meaningful limits since the offer of federal assistance is virtually universal.

Plaintiff cites no authority or reasoning by any court that provides a basis for finding liability based on the mere *offer* or *availability* of federal funding (Dkt 54 at 14-15). And this reasoning runs counter to the analysis and legislative intent recognized by the courts, including that in *Bentley*, 41 F.3d 600, cited by Plaintiff (Dkt 54 at 12-13).

Congress added the language in § 794(b)(1) when it passed the Civil Rights Restoration Act of 1987 ("Restoration Act"), amending the Rehabilitation Act. *Bentley,* 41 F.3d at 603. The legislative history of the Restoration Act explains how the amendment affects the coverage of state and local governments:

> "A. State and Local Governments.
>
> The bill provides that when any part of a state or local government department or agency is extended federal financial assistance, the entire agency or department is covered. If a unit of a state or local government is extended federal aid and distributes such aid to another governmental entity, *all of the operations of the entity which distributes the funds and all of the operations of the department or agency to which the funds are distributed are covered*.
>
> Examples: If federal health assistance is extended to a part of a state health department, the entire health department would be covered in all of its operations.
>
> If the office of a mayor receives federal financial assistance and distributes it to local departments or agencies, all of the operations of the mayor's office are covered along with the departments or agencies *which actually get the aid*."

*Id.* at 603-04 (quoting S. Rep. No. 64, 100th Cong., 2d Sess. 16 (1987), reprinted in 1988 U.S.C.C.A.N. 18. (second emphasis added)). The above explanation clearly recognizes that liability is incurred under § 794 when funds are *distributed* to an entity as opposed to "offered" to an entity.

Additionally, the *Bentley* Court noted that in *Paralyzed Veterans*, the court "expressed its concern that coverage of the federal civil rights laws would be extended to those that were not in a position 'to accept or reject those obligations as a part of the decision whether or not to 'receive'

15

federal funds.'" *Id.* at 604 (quoting *Paralyzed Veterans,* 477 U.S. at 606). This recognition further undermines Plaintiff's argument here. In *Bentley*, the court noted that each of the commissioners on the Cleveland County Board of County Commissioners signed an agreement with the Oklahoma Department of Transportation that expressly sought federal funds. *Id.* "Thus, the Board knowingly *requested and accepted* federal funds and cannot avoid the accompanying obligation to comply with federal civil rights laws." *Id.* (emphasis added). *See also Moreno*, 99 F.3d at 788 (quoting *Paralyzed Veterans,* 477 U.S. at 605) (Congress "limited the application of § 504 to recipients of 'federal financial assistance' for the reason that 'it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds.'")

Contrary to Plaintiff's argument, this Court concludes that the term "extend" cannot be construed as simply "to make available" or "to offer." It is clear that liability under § 794 hinges on the actual receipt of federal funding, as opposed to an offer of funding.

### B. Disposition

Having considered Plaintiff's contentions in light of the authority presented and the applicability of § 504 in other contexts, the Court finds no persuasive argument for holding 58th District Court liable as a recipient of federal financial assistance. Defendant 58th District Court's motion for summary judgment is granted with respect to Plaintiff's Rehabilitation Act claim.[8]

### IV. Ottawa County Motion

Defendant Ottawa County moves for dismissal on three bases under the Federal Rules of Civil Procedure: (1) Rule 12(b)(1) for lack of subject matter jurisdiction, (2) Rule 12(b)(6) for

---

[8]The Court declines at this time, however, to grant dismissal of the PWDCRA state law claim by declining supplemental jurisdiction as requested by 58th District Court, in light of the denial of Ottawa County's motion and Plaintiff's remaining federal claims in this case.

failure to state a claim, and (3) Rule 21 for misjoinder.[9]  Alternatively, Ottawa County moves for

summary judgment pursuant to Federal Rule Civil Procedure 56.  In its motion, Ottawa County

contends that "the FAC should be dismissed against Ottawa and the 58th District Court on the basis

of the Eleventh Amendment and the fact that there is no federal funding of the 58th District Court

that would otherwise possibly subject the Defendants to the Rehabilitation Act" (Dkt 47 at 2).

## A. Preliminary Matters

In its brief in support of its motion (Dkt 48 at 2), Ottawa County sets forth three questions

of law for decision:

1. Is the question of whether Ottawa County is a "joint employer" a matter
   of federal or state law?

2. Is the question of whether Ottawa County is the "joint employer" of the
   Plaintiff with respect to her termination as a court reporter for the 58th
   District Court a question of law?

3. Alternatively, do the undisputed facts demonstrate that the Ottawa [sic,
   County] does not fund the 58th District Court with federal funds such
   that the Rehabilitation Act count must be dismissed against it and the
   58th District Court?

As an initial matter, as Plaintiff points out (Dkt 52 at 6), this Court strictly limited

Defendants' preliminary dispositive motions to two issues, as discussed at the Rule 16 Conference:

(1)    whether Defendant 58th District Court received any federal funding during the
       relevant time period; and

(2)    with regard to determining the co-employer issue, whether state or federal law
       applies.

---

[9]Ottawa County moves for "summary disposition," which is a misnomer under federal court
rules; the County in effect moves for dismissal or alternatively for "summary judgment."

(Order, Dkt 34). The first issue has been resolved above with respect to 58th District Court's motion. With respect to the second issue, Ottawa County's motion and brief far exceed the issue circumscribed by the Court.[10]

The Court declines to decide the specific questions presented by Ottawa County.[11] This case appears to involve questions of first impression in the Sixth Circuit, and the dispositive issues and legal framework have been a "moving target." Having fully considered the parties' arguments, the Court finds no basis for granting dismissal or summary judgment with respect to Ottawa County based on the present briefing.

## B. Legal Framework

Plaintiff's three claims against Ottawa County are premised on the County's alleged status as a "co-employer or joint employer" of Plaintiff with 58th District Court (FAC ¶ 4). Ottawa County contests this status, and maintains that the County is not a co- or joint employer of a district court employee as a matter of law. There appears to be no settled law or legal framework to resolve this issue, and the courts that have addressed this issue have reached conflicting outcomes with little or no analysis.

Ottawa County asserts that the "joint employer" question under the ADA and the Rehabilitation Act is "structurally a federal question, [and] federal law on this issue turns on 'control' and recognizes as a matter of law that the state of Michigan law does not permit a

---

[10]The Court framed these issues based on pre-motion conference filings (Dkts 8, 10, 13-14), a status conference (Dkt 16) and a Rule 16 conference (Dkt 33) in which counsel represented that these preliminary issues should be decided to properly position this case for further proceedings.

[11]Ottawa County's argument does not follow or directly answer the questions stated. The County's foremost argument is that the Eleventh Amendment precludes the joint employer theory with respect to the termination of a Michigan district court recorder.

Michigan county to control the hiring or firing of a district court-reporter …" (Dkt 48 at 3). Accordingly, Ottawa County cannot be the joint employer of Plaintiff and has no liability with respect to her termination (*id.*). This Court agrees that the "joint employer issue" is governed by federal law, although this determination may be informed by Michigan law to the extent it is on point and appropriately considered.

Proceeding on this basis, Ottawa County advances a series of arguments in support of dismissal from this case. The County first contends that it is entitled to essentially derivative sovereign immunity pursuant to cases that have found Michigan courts entitled to immunity as an arm of the state. The Court does not find this argument persuasive based on the authority cited and given Plaintiff's joint employer argument, which was not the basis of the cited decisions.

The County cites *Pucci* (Dkt 48 at 4), and the Sixth Circuit's reliance on the Michigan Supreme Court's pronouncement that case law "'has come to strongly affirm that the *fundamental and ultimate responsibility for all aspects of court administration, including operations and personnel matters within the trial courts, resides within the inherent authority of the judicial branch* [of the State of Michigan].'" 628 F.3d at 763 (quoting *Judicial Attorneys Ass'n v State,* 586 N.W. 2d 894, 897 (Mich. 1998) (emphasis in *Pucci*))]. However, in *Pucci* the Sixth Circuit further acknowledged that [t]he City of Dearborn oversees the employment of the Nineteenth District Court's staff …." *Id.* The court then noted:

> Even the extent of the local funding unit's authority over court staff is not unchallenged. In *Judicial Attorney's Association*, the Michigan Supreme Court "declared unconstitutional a number of Michigan statutory provisions that designated the local funding unit, and not the State, as the employer of Michigan circuit, district, and probate court employees." *Dolan* [*v. City of Ann Arbor*], 666 F. Supp. 2d [754,] 761 n.8 [E.D. Mich. 2009] (citing *Judicial Attorneys Ass'n*, 586 N.W.2d at 899).

*Id.* at 764 n.10. *Pucci* focuses on sovereign immunity under the Eleventh Amendment and provides no definitive resolution of the joint employer issue presented in this employment discrimination case.

Ottawa County also relies on *Dolan v. City of Ann Arbor,* 407 F. App'x 45, 46 (6th Cir. 2011), involving an FMLA claim, and contends that the Sixth Circuit affirmed the district court's conclusion that a liability finding against the Fifteenth District Court would be a 'necessary precondition to the liability of the city,'" and therefore, the plaintiff's claim against the City was precluded by the district court's Eleventh Amendment protections (Dkt 48 at 5). However, neither the district court nor the Sixth Circuit's opinion provides any factual or legal basis for this conclusion, and Ottawa County provides no further support for extending the conclusion in *Dolan* to Plaintiff's claim against Ottawa County in this case.

Finally, the County cites *Housey ex rel. Housey v. Macomb County*, No. 10–11445, 2012 WL 1694629 (E.D. Mich. May 15, 2012), as the only more recent case in which a plaintiff/court staff person (probate register) attempted to hold a Michigan municipality liable on a "joint employer" theory, and the case was dismissed as a matter of law "on the basis that 'Macomb County does not hire, fire, or supervise the probate court register; that function is reserved by statute for the chief judge'" (Dkt 48 at 5, quoting *Housey*, at *9). This Court does not find *Housey* controlling here, however, because it was a suit by a probate register, and the matter of employment is expressly governed by statute. *Id.* (citing MICH. COMP. LAWS §§ 600.833 *et seq.*). Ottawa County acknowledges that no similar statute governs the employment of district court employees.[12]

---

[12]The Court recognizes that in *Housey*, the court stated that "[t]he co-employer theory articulated in *Turppa* [*v. County of Montmorency,* 724 F. Supp. 2d 783, 790 (E.D. Mich. 2010),*] appears to depart from Michigan Supreme Court precedent." 2012 WL 1694629, at *9. Regardless,

The Court is not persuaded that the cited authority conclusively establishes Ottawa County's nonliablity. As pointed out by Plaintiff (Dkt 52 at 15-16), the cases cited by the County are distinguishable by their facts, did not reach the joint-employer issue specifically, or failed to analyze the issue in any depth. Ottawa County is not entitled to dismissal or summary judgment on the preliminary grounds presented. The Court thus rejects Ottawa County's apparent contention that Michigan law exclusively controls the outcome of the co- or joint employer issue with respect to Plaintiff's federal discrimination claims.

Ottawa County argues that even if the initial specific precedent (discussed above) does not compel dismissal or summary judgment, such would be compelled by a fair view of broader federal precedent concerning joint employment (Dkt 48 at 6). The County asserts that the Sixth Circuit recognizes three "indirect" employer relationships in federal civil rights employment cases, namely, a "single employer," "joint-employer" or "agency theory" (*id.*). Initially, the County argues that these concepts are "analytically distinct," and Plaintiff could not assert either the single employer or agency theory because of "obvious Eleventh Amendment problems" since both would implicate the 58th District Court's sovereign power (*id.*).[13]

Plaintiff specifically asserts that federal law governs the joint employer issue, citing *United States v. Consumers Scrap Iron Corp.*, 384 F.2d 62 (6th Cir. 1967) (Dkt 52 at 9). The parties'

the Court declines to resolve this case solely on the basis of the limited statement in *Housey*, given that *Housey* involved a state statute that governs the appointment and termination of the probate register, MICH. COMP. LAWS § 600.833(1); that other district court decisions have taken a contrary view, and this appears to be an issue of first impression in the Sixth Circuit. (*See* Ottawa County's Reply brief, discussing the statutory distinction, Dkt 50 at 8).

[13]As discussed *infra*, Ottawa County abandons its "joint employer" arguments in its reply brief, contending that the facts in this case support only an agency theory based on the relationship between 58th District Court and the County.

positions on the governing law at this juncture do not appear to conflict. Regardless, as a general matter, "federal statutes of nationwide application are subject to interpretation by federal law." *Consumers Scrap Iron,* 384 F.2d at 64. Thus, the joint employer issue is properly resolved in light of federal law with respect to Plaintiff's federal claims, i.e., her ADA and Rehabilitation claims.[14]

## C.  Co- or Joint Employer Theory

Although the controlling law issue is resolved, the parties proceed with additional argument, which the Court will address for the benefit of any further proceedings in this case. With respect to a "joint employer" relationship, Ottawa County again cites to the conflicting federal district court opinions on the issue of sovereign immunity, and essentially reiterates its arguments above to contend that liability based on the "joint employer" theory is precluded by sovereign immunity. *See Pucci,* 628 F.3d 752; *compare Turppa v. Cnty. of Montmorency (Turppa I),* 724 F. Supp. 2d 783, 790 (E.D. Mich. 2010) (Ludington, J.) *with Dolan v. City of Ann Arbor,* 666 F. Supp. 2d 754, 764-65 (E.D. Mich. 2009) (Rosen, C.J.). The County argues that "the clear import of *Dolan* and *Pucci* is that even if the Plaintiff in the present case were right and Ottawa County and the 58th District Court 'shared' the decision to terminate her, that very allegation—the intertwinement of the decision-making—is fatal because it cannot be challenged without impairing the dignity of the 58th District Court in contravention of the Eleventh Amendment" (Dkt 48 at 10).

Ottawa County argues further that based on the above case law addressing sovereign immunity, the joint employer premise is "legally impossible" because a local government cannot legally share in the decision to terminate a court reporter (Dkt 48 at 10-11). Thus, Plaintiff's claim

---

[14]There appears to be no dispute that state law governs whether the county was a co-employer under the PWDCRA. *See Turppa,* 724 F. Supp. 2d at 789.

fails.[15]  For the reasons discussed above, the Court does not find these arguments conclusive on the joint employer issue.

Plaintiff contends that federal courts have looked to federal law when interpreting the definition of "employer" under federal discrimination laws.  Plaintiff cites a trio of decisions by Judge Ludington in *Turppa*, in which he (1) determined that the decision in *Judicial Attorneys Association* was not conclusive on the issue whether the county and the probate court were co-employers, *Turppa I,* 710 F. Supp. 2d at 630; (2) after additional briefing, found that the additional facts did not change the conclusion reached in the last Opinion and Order: "the most logical inference that can be drawn from the circumstances surrounding Plaintiff's employment is that Plaintiff may have been a co-employee of both the county and the probate court," *Turppa v. Cnty. of Montmorency (Turppa II),* 724 F. Supp. 2d 783, 788 (E.D. Mich. July 14, 2010); and (3) denied reconsideration, *Turppa v. Cnty. of Montmorency (Turppa III),* No. 09-12974-BC, 2011 WL 1042262 (E.D. Mich. Mar. 18, 2011)[16] (Dkt 52 at 9-12).

---

[15]Ottawa County again conflates the applicable federal rules, contending that it is entitled to dismissal for failure to state a claim pursuant to Rule 56 (Dkt 48 at 12).  Such confusion only renders the County's arguments more vulnerable for failure to cogently meet the applicable standards for dismissal or summary judgment under the federal rules.

[16]To the extent Ottawa County argues that *Turppa III* was wrongly decided and that Judge Ludington would have reached a different conclusion based on the Sixth Circuit's decision in *Pucci*, the argument has no merit.  Plaintiff correctly notes that in denying reconsideration, Judge Ludington acknowledged the Sixth Circuit's decision in *Pucci* and nonethless concluded that the county may be responsible for age discrimination because "there is some evidence that [the county] had some degree of administrative control over the terms and conditions of Plaintiff's employment." 2011 WL 1042262, at *5.  In ultimately granting summary judgment on the merits, Judge Ludington declined to reach the county's alternative argument that it could not be held liable under the ADEA because it was not the plaintiff's employer.  *Turppa v. Montmorency Cnty. (Turppa IV)*, No. 09–12974–BC, 2011 WL 10940989, at *9 (E.D. Mich. Oct. 26, 2011).

In its reply brief, Ottawa County changes tack on the joint employer issue, and takes the new position that this case is properly decided on agency theory not a joint employer relationship. The County attributes this change in position/problem in part to the "loose language" used by the state courts, counties, federal courts, and the plaintiffs in describing and applying the "indirect" liability concepts—including the language used in this case by Ottawa County and 58th District Court in their collective bargaining agreement and in the termination letter[17] (Dkt 50 at 2). The County asserts that a Michigan county has no legal right upon which a joint employer finding could be premised, and at most, a county operates in the court's personnel arena based on a court delegation that is only consistent with an agency theory of indirect liability (*id.*). The County argues that under agency law, an agent assumes no individual liability, and instead, only binds the principal; accordingly, the Eleventh Amendment applies regardless of any role Ottawa County is alleged to have played in Plaintiff's termination (*id.*).

Also in reply, Ottawa County belatedly challenges Plaintiff's argument that the County and 58th District Court are "co-employers," asserting that is **not** an option under Sixth Circuit law (Dkt 50 at 4, emphasis in original). The County asserts that what Plaintiff means to argue is that the County and 58th District Court are "joint-employers" or what Judge Rosen functionally described as the "joint administration" theory in *Dolan*, 666 F. Supp. 2d 754, which "although legally imprecise, is descriptive of the way the status works" (Dkt 50 at 4, n.3).

---

[17]The collective bargaining agreement between Ottawa County Employees Association and the Judges of the 58th Judicial District of Michigan and the County of Ottawa, refers to the Judges of the 58th District Court and Ottawa County collectively as the "Employer" (Plaintiff's Statement of Material Facts (PSMF), Dkt 53, ¶ 6; Dkt 53-3 at 5). The termination letter was sent by officials of Ottawa County and stated that Plaintiff's "employment with Ottawa County is terminated" (PSMF ¶ 16; Dkt 53-4).

Ottawa County notes that the parties agree that the Sixth Circuit recognizes three "indirect" employer relationships in federal civil rights employment cases, a "single employer," joint-employer," or "agency theory," *Swallows v. Barnes & Noble Book Stores, Inc.,* 128 F.3d 990, 993 (6th Cir. 1997).[18] The County observes that pursuant to *Swallows*, the "joint employer" status involves two separate entities that legally share the decision-making:

> "The basis of the [joint employer] finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer. Thus, the "joint employer" concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment."

*Id.* n.4 (citations omitted). Ottawa County contends that Plaintiff does not dispute that under Michigan law, 58th District Court may not legally share employment decision-making with Ottawa County; therefore, their cooperation, at most, constitutes 58th District Court designating the County as an agent (Dkt 50 at 5). Thus, because it is black-letter law that an agent is not personally liable when acting on behalf of a known principal, Ottawa County cannot be held independently liable even though it sent the termination letter to Plaintiff (*id.*). Ottawa County asserts that Plaintiff's failure to appreciate this distinction is a fundamental flaw in her argument, as well as in Judge Ludington's analysis in the *Turppa* decisions (*id.* at 6). Accordingly, even though Judge Ludington recognized the potential for the delegation of some employment decisions, he was clearly describing an "agency theory," not a "joint administration" or "joint-employer" concept in stating:

[18]"'Because Title VII, the ADEA, and the ADA define 'employer' essentially the same way,' we rely on case law developed under all three statutes.'" *Swallows,* 128 F.3d at 993 n.2 (citation omitted).

> [I]ndividual judges may delegate some of the managerial and administrative duties related to hiring, firing, and compensating judicial workers to local administrators for the sake of convenience and efficiency. Indeed, the judges are encouraged by the Michigan Supreme Court to adopt the counties' personnel policies concerning compensation, benefits, holidays, and pensions unless there is a good reason to deviate. This is a reflection of the "hybrid" nature of Michigan's courts.

*Turppa I,* 710 F. Supp. 2d at 628.

Ottawa County states that in the above quote, Judge Ludington may be portending this case (Dkt 50 at 6). But the County argues that even if Plaintiff's termination letter loosely referred to "county" employment as terminating, "what it really meant to say was that the chief judge or the court administrator had tasked the Ottawa personnel department as its personnel agent with the responsibility of communicating [Plaintiff's] termination from the 58th District Court, her sole employer" (Dkt 50 at 7, citing *Geller v. Washtenaw Cnty.,* No. 04-CV-72947, 2006 WL 2726965 (E.D. Mich. Sept. 22, 2006)).

Since Ottawa County raises these new arguments only in its reply brief, the Court has no responsive argument from Plaintiff. It is the Court's observation that the arguments in this case, with respect to Ottawa County's motion in particular, seem to be a "work in progress," which provides a precarious foundation for ruling on what appears to be a complicated issue not yet decided by the Sixth Circuit. The Court is not persuaded that the legal framework or the factual record before the Court is sufficiently developed to apply the legal principles now espoused. As Judge Ludington observed in *Turrpa I*, for most employees seeking to bring a claim under the ADEA or ELCRA, identifying their "employer or employers" is a simple task, but for administrative staff of the Michigan Judiciary, the question is complicated by the relationship between the state's trial courts and the local government units that fund their operation. *Turppa I*, 710 F. Supp. 2d at 620.

Further, as the court's analysis in *Turppa* bears out, the co-employment issue likely must take into account the specific facts and circumstances of the case:

> "[T]he additional facts provided by the county at the Court's request do not change the conclusion reached in the last Opinion and Order: the most logical inference that can be drawn from the circumstances surrounding Plaintiff's employment is that Plaintiff may have been a co-employee of both the county and the probate court. Although the chief probate judge exercises sole managerial control over the Montmorency County probate register's performance of judicial responsibilities, over time, some employment oversight duties were also being performed by the county. The county's personnel policies, for example, were adopted by the probate court and the county board made the determination, pursuant to those policies, of whether Plaintiff should be paid for unused vacation time when her employment ended. Indeed, it is undisputed that the county was also responsible for funding Plaintiff's position, was identified as Plaintiff's employer on the W–2 issued for federal income tax purposes and submitted to the Internal Revenue Service, and responded as Plaintiff's employer to unemployment inquiries. Plaintiff has demonstrated that the county and the probate court may well have served as coemployers."

*Turppa III,* 2011 WL 1042262, at *1 (quoting *Turppa II,* 724 F. Supp. 2d 788). Accordingly, Ottawa County's motion to dismiss based on Rule 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(6) for failure to state a claim, and Rule 21 for misjoinder, based on its contentions that the County has no legal liability and is not a proper defendant, is denied.

With regard to summary judgment, at a minimum, there is preliminary evidence supporting Plaintiff's co-employer contention:

> For example, in the collective bargaining agreement between Ottawa County Employees Association and the Judges of the 58th Judicial District of Michigan and the County of Ottawa, the Judges of the 58th District Court and Ottawa County are referred to as collectively as the "Employer." (SMF, ¶ [6]). The employment agreement that plaintiff signed stated that she was an employee of Ottawa County. (SMF, ¶ [3]). Plaintiff's W-2's and pay check were issued by Ottawa County (SMF, ¶ 2). Plaintiff's termination letter was sent by officials of Ottawa County and stated that plaintiff's employment with Ottawa County was being terminated. (SMF, ¶ 15). It was Ottawa County that communicated with the plaintiff regarding the length of her medical leaves of absence. (SMF, ¶¶ 15,16).

(Dkt 52 at 19-20; PSMF, Dkt 53).  Thus, as with the defendant Montmorency County in *Turppa*, Ottawa County as the movant, has not met its burden of proving the absence of a material issue of fact as to whether the county is Plaintiff's employer or co-employer.  *See Turppa III*, 2011 WL 1042262, at *2.  The Court is not, however, persuaded that summary judgment is entirely foreclosed.  That is a matter to be decided once the proper legal framework is determined and considered in light of the full factual record.  Therefore, Ottawa County's motion for summary judgment, in the alternative, is denied without prejudice.

## V.  Conclusion

The Court finds no basis for holding 58th District Court liable as a recipient of federal financial assistance.  Defendant 58th District Court's motion for summary judgment with respect to the Rehabilitation Act is granted.

The Court is not persuaded that the legal framework or the factual record before the Court is sufficiently developed to decide liability with regard to Ottawa County.  The co- or joint employment issue likely must take into account the specific facts and circumstances of the case.  Accordingly, Ottawa County's motion to dismiss based on Rule 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(6) for failure to state a claim, and Rule 21 for misjoinder, is denied.  Ottawa County's motion for summary judgment, in the alternative, is denied without prejudice.

An Order will be entered consistent with this Opinion.


Dated: March  26 , 2014                           /s/ Janet T. Neff                         
                                                  JANET T. NEFF
                                                  United States District Judge